JOURNAL ENTRY AND OPINION
{¶ 1} The State of Ohio appeals from separate judgments of the common pleas court granting John Jackson's motions to suppress evidence in connection with the state's charge of ballot tampering by Jackson.[1]
The evidence at issue consists of two sets of ballots cast in the November 2000 general election by elderly disabled residents of the Kethley House Nursing Home, who were assisted by Jackson and Linda Weaver, both Cuyahoga County Board of Elections employees, in casting their absentee ballots in that election. Because we have concluded the trial court properly suppressed this evidence, we affirm that judgment of the court.
 {¶ 2} The history of this case reveals that on October 20, 2000, the Cuyahoga County Board of Elections assigned two employees, Linda Weaver, a Democrat, and John Jackson, a Republican, to assist residents of the Kethley House in marking their ballots and to monitor the voting process to insure compliance with applicable laws. Altogether, the Weaver-Jackson team assisted 13 voters at Kethley House. After voting, each elector would place his or her ballot into an envelope and sign it; for those unable to sign, Weaver or Jackson would sign the envelope, attesting to the voter's mark. All 13 of those ballots had been inserted into envelopes signed either by the voter or by Weaver or Jackson. During the entire voting process, neither Weaver nor Jackson raised any concerns regarding the voting process, and on that day, they returned all 13 ballots to the Cuyahoga County Board of Elections in compliance with Board procedure and state statutes. Upon returning to work on October 23, 2000, however, Weaver reported that she had witnessed Jackson punch ballots contrary to the expressed intentions of some of the Kethley House voters.
 {¶ 3} Thereafter, on October 24, 2000, Henry Tekancic, an Investigator for the Cuyahoga County Prosecutor's Office, interviewed Weaver and later signed an affidavit on November 16, 2000, alleging that Weaver claimed Jackson marked certain ballots differently from the wishes of some of the Kethley House electors. In his affidavit, Tekancic advised that all 13 of the October 20, 2000 ballots were secured and sealed at the Board of Elections and would not be counted, and he further stated that on November 3, 2000, all 13 voters recast their ballots. He also averred that these two sets of ballots contain evidence of election fraud necessitating the state's inspection and seizure of those ballots.
 {¶ 4} During the course of his investigation, Tekancic interviewed Betty White, a Kethley House voter, but never obtained a sworn statement from her; she gave a deposition, however, on November 29, 2001, in which she averred she voted a "Democrat" ticket, and she also stated she never gave anyone permission to look at the ballot she cast.
 {¶ 5} On June 18, 2001, a grand jury indicted Jackson in case number 408434, for five counts of tampering with ballots in violation of R.C. 3599.26, and for one count of misconduct of an employee of the Board of Elections in violation of R.C. 3599.16.
 {¶ 6} The state presented this matter to a second grand jury on December 3, 2001, and obtained another six-count indictment against Jackson in case number 416990.[2]
 {¶ 7} During discovery, the state disclosed that Jackson's indictment involved five absentee ballots cast by residents at the Kethley House, two of whom have since died.
 {¶ 8} On January 17, 2002, Jackson filed a motion to suppress all ballots cast, both on October 20, 2000 and on November 3, 2000, and, after conducting a hearing, the court granted this motion. The state now appeals from that ruling and has presented four assignments of error for our review, which we review jointly. They state:
 {¶ 9} "I. The trial court erred when it granted the motion to suppress evidence seized pursuant to a search warrant because appellee lacked standing to assert the exclusionary rule."
 {¶ 10} "II. The trial court erred when it granted the motion to suppress evidence seized pursuant to a search warrant because the exclusionary rule has no application based solely on Ohio statutes or provisions of the Ohio Constitution."
 {¶ 11} "III. The trial court erred when it granted the motion to suppress evidence seized pursuant to a search warrant because the good-faith exception to the exclusionary rule required that the prosecutor be allowed to use the evidence in its case-in-chief."
 {¶ 12} "IV. The trial court erred when it granted the motion to suppress evidence seized pursuant to a search warrant because the trial court improperly reviewed the facts supporting probable cause contained within the search warrant."
 {¶ 13} The state contends that the exclusionary rule regarding evidence obtained in violation of the Fourth Amendment's prohibition against unlawful search and seizure cannot apply to exclude these ballots for two reasons: one, because Jackson lacks standing to raise this challenge and two, because the state seized them pursuant to a validly issued search warrant. Jackson asserts, however, that this is not a Fourth Amendment suppression, but rather one based on illegal evidence gathering. He argues the court properly suppressed this evidence because the secrecy of a ballot is protected by law and he also argues the state gathered this evidence in violation of the election laws of the State of Ohio.
 {¶ 14} We begin our analysis of these claims by examining the proper standard of review. Appellate review of a decision of a trial court on a motion to suppress evidence presents mixed questions of law and fact. See State v. McNamara (1997), 124 Ohio App.3d 706, 710. "When considering a motion to suppress, the trial court assumes the role of the trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of the witnesses." See State v.Mills (1992), 62 Ohio St.3d 357, 366. Accordingly, we are bound to accept the trial court's findings of fact if they are supported by competent, credible evidence. See State v. Guysinger (1993), 86 Ohio App.3d 592,594. However, the appellate court must determine, de novo, whether the trial court's conclusions of law, based on those findings of fact, are correct. See State v. Klein (1991), 73 Ohio App.3d 486, 488.
 {¶ 15} Substantively, the issues we confront here involve the procedures for absentee voting by disabled voters and for gathering evidence of ballot tampering in such instances. In this regard, R.C.3509.08 provides for absentee voting by disabled voters. It states, in relevant part:
 {¶ 16} "(A) Any qualified elector, who, on account of the elector's own personal illness, physical disability, * * * may make application in writing for an absent voter's ballot * * *.
 {¶ 17} "* * * the board may designate two board employees belonging to the two major political parties, for the purpose of delivering the ballots to the disabled or confined elector and returning them to the board * * *.
 {¶ 18} "Any disabled or confined elector who declares to the two employees that the elector is unable to mark the elector's ballot by reason of physical infirmity, and such physical infirmity is apparent to the employees to be sufficient to incapacitate the voter from marking his ballot properly, may upon request, receive the assistance of the two employees in marking the elector's ballot, and they shall thereafter giveno information in regard to this matter. Such assistance shall not be rendered for any other cause.
 {¶ 19} "When two board employees deliver ballots to a disabled or confined elector, each of the employees shall be present when the ballotsare delivered, when assistance is given, and when the ballots arereturned to the office of the board, and shall subscribe to thedeclaration on the identification envelope.
 {¶ 20} "The secretary of state shall prescribe the form of application for absent voter's ballots under division (A) of this section." (Emphasis added.)
 {¶ 21} This section of the Code charges the Secretary of State with responsibilities for prescribing the form of the absentee ballot and empowers the Board of Elections to designate two employees to deliver ballots, provide assistance upon request, and to return the ballots to the Board.
 {¶ 22} Secrecy is the hallmark of voting in the United States, and the sanctity of secret ballots is inherent in our election system. "The essential of ballot voting is secrecy, in order that the elector may exercise the franchise as he pleases, uncontrolled and unquestioned by any person or power." State ex rel. Automatic Registering Mach. Co. v.Green (1929), 121 Ohio St. 301, citing Williams v. Stein (1871),38 Ind. 89. Further, the Ohio General Assembly has specifically provided for the secrecy of ballots in the election statutes: "No person shall attempt to induce an elector to show how the elector marked the elector's ballot at an election * * *." (Emphasis added.) R.C. 3599.20. Furthermore, R.C. 3505.18 provides that: "No mark shall be made on any ballot which would in any way enable any person to identify the person who voted the ballot."
 {¶ 23} The same secret ballot rule applies in the case where a voter requires assistance with marking his or her ballot: R.C. 3509.08(A) provides that the two employees from the Board of Elections, after assisting a disabled elector in marking his or her ballot, "shall thereafter give no information in regard to this matter."
 {¶ 24} If the legislature had intended an exception to the secrecy rule to enable prosecutions for the offense of tampering with ballots, it could have provided for the Board of Elections or the Prosecutor's Office to examine ballots in such cases. It did not do so.
 {¶ 25} Accordingly, the act of securing and sealing the October 20, 2000 ballots for purposes of trying to identify how a particular elector voted is contrary to law, as no statutory authorization exists to allow the Prosecutor's Office or the Board of Elections to secure or seal ballots for purposes of making such an examination. Further, the effort to identify the person or persons who cast those specific ballots and to induce those electors to show how they marked their ballots is contrary to R.C. 3599.18 and 3599.20.
 {¶ 26} Rather, the statute safeguards against fraud or the exercise of undue influence upon voters who require assistance by providing for two officials, one from each major political party, who function as a check and balance upon each other. Specifically, R.C. 3509.08
provides that those employees who assist a disabled voter shall be present when the ballots are delivered, when the assistance is given, and when the ballots are returned to the office of the board, and it provides that they shall subscribe to the declaration on the identification envelope. Notably, the legislature expressly protects the secrecy of ballots even under this circumstance: R.C. 3509.08 states that the two employees who assisted the disabled electors "shall thereafter give no information in regard to this matter."
 {¶ 27} Regarding the November 3, 2000 effort at re-voting, we note that in arguments presented to the trial court at the hearing on his motion to suppress and again in his appellate brief filed with our court, Jackson claimed that the November 3, 2000 re-vote was not conducted by the Board of Elections but rather by the Prosecutor's Office. Specifically, in his appellate brief, Jackson asserts the following:
 {¶ 28} "* * * the Cuyahoga County Prosecutor's Office secured the ballots of all residents of Keithly [sic] House assigned to the Weaver/Jackson team, inquired of these residents about their voting record, and, on November 3, 2000, required these residents to vote again so that their voting choices could be compared with their voting choices from October 20, 2000. This second set of ballots was, again, read by Appellant and subsequently published for public consumption. None of the parties dispute that the entire, ballot-gathering process was conducted through the office of the Cuyahoga County Prosecutor's Office and the election for the County Prosecutor was also on the ballot."
 {¶ 29} Regardless of which agency — the Board of Elections or the Prosecutor's Office — actually conducted the November 3, 2000 balloting at the Kethley House, and regardless of whether this procedure was undertaken to tabulate actual ballots or to gather evidence of ballot tampering, those ballots have been generated without statutory authority, because the Revised Code neither authorizes nor contemplates a "re-vote" for investigation of alleged ballot tampering, or for purposes of counting ballots.
 {¶ 30} On the basis of the foregoing, the trial court properly excluded the October 20 and the November 3 ballots from evidence in this case. Based on the facts presented, the court's conclusion of law is correct because no authority exists to secure or seal the October 20 ballots or to ascertain the identity of the candidates for whom those ballots had been cast; and, with respect to the November 3 ballots, neither the prosecutor nor the Board of Elections had statutory authority to generate them.
 {¶ 31} Accordingly, we do not reach the issues of whether the exclusionary rule within the Fourth Amendment context applies to the instant case or whether Jackson had a legitimate expectation of privacy in the ballots to establish standing for asserting a Fourth Amendment violation.
Judgment affirmed.
JAMES J. SWEENEY, P.J., CONCURS.
COLLEEN CONWAY COONEY, J., DISSENTS WITH SEPARATE DISSENTING OPINION.
[1] Two separate cases have been consolidated for briefing, hearing, and disposition on this appeal: appellate No. 80937 arises from common pleas court case number 408434 and appellate No. 81013 arises from common pleas court case number 416990. Although the prosecutor requested the trial court to dismiss case number 408434, because it had re-indicted the defendant in case no. 416990, the court never journalized such an order; this resulted in the state filing two separate appeals in our court.
[2] The second indictment differed from the first in that, for the first five counts alleging Jackson's violation of R.C. 3599.26 by "fraudulently or deceitfully chang[ing] the ballot of an elector", the state added the phrase "and/or unduly delay or hinder an elector from attempting to vote or voting"; in the sixth count alleging violation of R.C. 3599.16, the state amended the time period to a period dating from October 9, 2000 through October 20, 2000.